UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

STATE OF CONNECTICUT            :   3:18mj192(JSH)

: ~~January~~ February 13, 2018

COUNTY OF NEW HAVEN            :   **FILED UNDER SEAL**

**AFFIDAVIT**

I, James Kaminski, being duly sworn, state as follows:

**Introduction**

1.  I am a Special Agent of the Federal Bureau of Investigation ("FBI"), and have been so employed for approximately 15 years. I am presently assigned to the Public Corruption Squad in the New Haven Division of the FBI, where I investigate, among other things, public corruption and related financial crimes. I have also received training and gained experience in interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, and various other criminal law procedures. Through my training, education, and experience, I have become familiar with a variety of fraud schemes, particularly contract fraud and false claims filed with the government.

2.  As a Special Agent of the FBI, I am authorized to investigate violations of the laws of the United States, and I have received specialized training in the investigation of various violations of Title 18 of the United States Code and related forms of fraud against the government.

1

3. I am investigating a fraud scheme by **Darrin Lamore,** resident of Enfield, CT. I make this affidavit in support of the Government's application for a criminal complaint and an arrest warrant for **Darrin Lamore** for theft from a program receiving federal funds in violation of Title 18, United States Code, Section 666.

4. From in or about June 2012 through in or about October 2015, **Lamore** held a paid position as the executive director of the Enfield Community Development Corporation ("ECDC"). The ECDC was a non-profit private corporation. The ECDC oversaw economic development projects in Enfield, Connecticut, primarily in a geographic area known as "Thompsonville."

5. Co-Conspirator A was an employee of the Town of Enfield and one of the individuals with authority over how ECDC money was spent.

6. The Community Development Block Grant ("CDBG") is a program of the United States Department of Housing and Urban Development, and funds local community development activities such as affordable housing, anti-poverty programs and infrastructure development. The State of Connecticut Department of Housing administers the CDBG grants within the State of Connecticut.

7. Brownfield grants are grants provided by the federal government's Environmental Protection Agency to communities, states, tribes and others to assess, clean and reuse contaminated properties.

8. The Connecticut Department of Economic and Community Development ("DECD") is a Connecticut state agency tasked with promoting economic development in Connecticut's towns and cities.

9. To fund its activities, the ECDC received funding from the CDBG and Brownfield grants and the DECD.

10. On or about June 11, 2012, Co-Conspirator A emailed **Lamore**, informing him that only 20% of CDBG grant money could be used for administrative costs, which included salaries.

11. On or about June 21, 2012, **Lamore** emailed Co-Conspirator A regarding the ECDC's plan to publicly advertise for applicants for the position of ECDC director, a position that **Lamore** and Co-Conspirator A had discussed creating for **Lamore**. In the email **Lamore** wrote, "Then looks like I should look for another job. Unless that's just to cover us."

12. On or about June 21, 2012, Co-Conspirator A responded to **Lamore** saying "It's a cover," and stated in a subsequent email, "Damn laws and regs."

13. On or about June 21, 2012, **Lamore** wrote to Co-Conspirator A saying, "I'm fine with any of it, just planning how I can eat."

14. On or about July 18, 2012, Co-Conspirator A wrote to **Lamore** saying, "We have to pass you off as a Grants Management consultant. Which should be easy since we work in the same office."

15. On or about October 30, 2012, Co-Conspirator A falsely certified to the State of Connecticut that between July 1, 2012 and September 30, 2012, the ECDC had used CDBG funds for $15,443.09 of down payment assistance, when in fact approximately $11,840 of that amount was used for **Lamore's** salary. Co-conspirator A also certified that $0 were spent on administrative costs such as salaries.

16. On or about February 1, 2013, Co-Conspirator A falsely certified to the State of Connecticut that between October 1, 2012 and December 30, 2012, the ECDC had used CDBG

fund for $16,951.13 of down payment assistance, when in fact approximately $16,280 of that amount was used for **Lamore's** salary. Co-conspirator A also certified that $0 were spent on administrative costs such as salaries.

17. On or about May 21, 2013, Co-Conspirator A falsely certified to the State of Connecticut that between January 1, 2013 and March 31, 2013, the ECDC had used CDBG funds for $10,838.69 of down payment assistance, when in fact approximately $10,360 of that amount was used for **Lamore's** salary. Co-conspirator A also certified that $0 were spent on administrative costs such as salaries.

18. On or about June 21, 2013, Co-Conspirator A signed a paycheck for **Lamore**, misappropriating grant funds for **Lamore**'s salary.

19. On or about May 20, 2015, Co-Conspirator A sent a requisition request to the State of Connecticut that contained an invoice that **Lamore** had inflated by $2,700.

20. On or about July 1, 2015, Co-Conspirator A sent a requisition request to the State of Connecticut that contained two separate invoices, each of which **Lamore** had inflated by $1,000.

21. On or about March 8, 2017, I interviewed **Lamore**. During the interview, he confessed to knowingly misappropriating grant funds to pay his salary and to falsifying the aforementioned invoices.

22. I am aware that in order to violate § 666, the entity in question must receive more than $10,000 of federal benefits in a one year period and the property stolen or embezzled must be worth at least $5,000. According to my review of the records, the ECDC received more than

$90,000 in federal funds in 2013. Additionally, my calculations indicate that **Lamore** stole over $95,000 from the ECDC through his fraudulent activity.

### Conclusion

23.    The facts set forth in this affidavit establish probable cause to believe, and I do believe, that **Darrin Lamore** committed theft from a program receiving federal funds in violation of Title 18 United States Code, Section 666.

### Sealing

24.    Because this Affidavit and the accompanying documents pertain to an ongoing criminal investigation, and because disclosure of the information contained in these documents at this time may compromise the investigation, I request that this Affidavit, the arrest warrant application and the non-disclosure order all be ordered sealed, until further order of the Court.

JAMES KAMINSKI
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Subscribed and Sworn to before me at New Haven, CT
this 13TH day of February 2018

/s/ Charles S. Haight, Jr.
HONORABLE CHARLES S. HAIGHT
UNITED STATES DISTRICT JUDGE